ALICE F. HALLADAY, Respondent, *v.* HARRISON B. McGRAW, as Assignee for the Benefit of Creditors of GEORGE H. WORTHINGTON et al., Appellants.

Contract — chattel mortgage — redemption of pledged property — deposit of fund in trust to await settlement of disputed questions — payment of counsel fees incurred on foreclosure not a condition of redemption — principal and agent — commissions — allowance for charges and disbursements — when mortgagee assumes risk of private sale of pledged property and must respond for value thereof — when mortgagee chargeable with value of pledged property remaining in her possession — severance of claims improper — when agent not a factor so as to be entitled to lien for value of services.

The maker of a promissory note executed and delivered to plaintiff, the payee, a chattel mortgage covering a stamp collection as collateral security for the payment thereof. Thereafter in an action by plaintiff it was determined that she had a first lien on the stamp collection and that the stamps should be sold by her, in accordance with the practice in the case of foreclosure of chattel mortgages or pledges, at public sale to the highest bidder after due notice as required by law. Plaintiff sold some of the stamps at private sale and applied the proceeds upon her judgment and thereafter served notice upon the assignee of the mortgagor and maker of the note to pay to her the balance due, or in default the stamp collection would be sold at public auction. The assignee, thereupon, offered to redeem and a controversy arising as to the amount due the plaintiff and her ability to deliver the stamps, the plaintiff and the assignee entered into an agreement in writing reciting that an agent of plaintiff had received as the proceeds of private sales of stamps $31,868.41 which he had not paid over to plaintiff, of which sum said agent claimed $7,995.26 as commissions; that said agent held in addition stamps of the estimated value of $55,000, which had been delivered to him by plaintiff for sale and that plaintiff had incurred counsel fees in the foreclosure action amounting to $13,327 and expenses in connection with the stamp collection aggregating $1,115. Plaintiff claimed that the assignee should pay these amounts to her and collect from the agent the money and stamps in his possession while the assignee claimed that such amounts should be charged against plaintiff. The agreement further recited that the assignee should be put in possession of the stamps remaining in plaintiff's possession, that plaintiff should be paid such portion of

1921.] Statement of case. [231 N. Y. 382]

her claim as was not in dispute which was thereupon paid and that the balance should be deposited in trust to await adjustment or judicial determination of the disputed questions. Thereafter this action was commenced by plaintiff, in which the assignee and the plaintiff's agent are named as defendants to have determined the rights of the parties to the action to the trust fund in question. *Held,*

*First,* that defendant assignee was not required as a condition of redemption of the stamps to pay to plaintiff the item of counsel fees mentioned in the agreement;

*Second,* that as to the item stipulated as the proceeds of sales of stamps made by the defendant agent, the trial justice properly found that the agent had been paid all commissions due him and that there remained in his custody the amount stipulated in the agreement;

*Third,* that an allowance to the agent of certain charges and disbursements found to have been made by him in connection with sale of stamps was erroneous as irreconcilable with a former finding that the agent was to pay all expenses in connection with a sale of the stamps;

*Fourth,* that an allowance to the agent for services performed in remounting stamps was erroneous where such services were voluntarily performed by him and the subject was not litigated in the foreclosure action. Plaintiff cannot be permitted to sever a claim existing at the commencement of the foreclosure action and secure relief thereon in this action;

*Fifth,* that the trial justice erred in holding that plaintiff should assign to defendant assignee a judgment in her favor against defendant agent for the amount found due from said agent to her and accounts for stamps sold by her agent on credit. Having failed to comply with the direction of the court to sell the stamps at public sale plaintiff assumed all risks of private sale for cash or for credit and assumed a liability to respond for the value of any stamps which she had intrusted to others. She should have been charged with the sum in the hands of her agent or due from him for stamps sold in reduction of the amount on deposit;

*Sixth,* plaintiff is chargeable with the value of any stamps remaining in her possession and the burden of proof rests upon her to prove the disposition of all the stamp collection intrusted to her possession. Defendant assignee having deposited a sum estimated as the value of the stamps in the hands of plaintiff's agent is entitled to stamps of that value or a return of such excess thereof as may remain after deducting the value of stamps delivered to him;

*Seventh,* that an allowance to plaintiff for expenses alleged to have been incurred by her in the care of stamps was improper where the

evidence disclosed that such claim existed at the time of the trial of the foreclosure action and might have been litigated therein;

*Eighth*, that the trial justice properly refused to find that defendant agent was a factor with respect to all stamps actually delivered to him and as such was entitled to a lien thereon for the reasonable value of his services under his contract with plaintiff or that he had an equitable lien upon the funds and stamps in court or entitled to the relief sought by him in this action.

*Halladay* v. *McGraw*, 190 App. Div. 929, reversed.

(Argued March 17, 1921; decided June 10, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 6, 1920, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at an Equity Term.

*Daniel J. Kenefick* for Harrison B. McGraw, as assignee, appellant. The trial court erroneously awarded the respondent Halladay $850 for expenses and $2,000 as an additional allowance out of the deposited fund, which money should have been awarded to McGraw. (*Willard* v. *White*, 55 Hun, 581.) The trial court erroneously awarded the respondent Halladay $31,868.41 of the deposited fund which should have been awarded to the appellant McGraw. (*Williamson* v. *Barry*, 8 How. [U. S.] 669; 1 Freeman on Judgments, § 215.)

*Louis L. Babcock* for Warren H. Colson, appellant. The plaintiff on December 7, 1915, made a clear and unequivocal agency contract with Colson for the sale of stamps having a value of $300,000 and upwards. That contract contained no limitation as to time whatsoever, and in any view of the case, Colson is entitled to twenty per cent, the agreed commission, upon such sum or the reasonable value of his services in connection therewith. (*Morehouse* v. *B. H. R. R. Co.*, 185 N. Y. 520.) Under the circumstances disclosed by the record,

Colson had an equitable lien upon the fund deposited in court and the moneys and stamps in his possession at the time this suit was brought. (*Galle* v. *Tode*, 148 N. Y. 270; *Morehouse* v. *Brooklyn Heights R. R. Co.*, 185 N. Y. 520; Jones on Liens, § 422; Pom. Eq. Juris. § 1239; Mechem on Agency [2d ed.], § 2497.) In any event, Colson is entitled to a money judgment against the plaintiff and the defendant McGraw, or one of them. (*Sussdorff* v. *Schmidt*, 55 N. Y. 319; *Lockhart* v. *Hamlin*, 190 N. Y. 132; *Hubbell* v. *Hendrickson*, 175 N. Y. 175.)

*Wallace Thayer* for respondent. The trial court correctly allowed the plaintiff the residue owing on her judgment, $86,830.21, with interest, payable out of the $101,310.41 deposited. (*Coe* v. *Cassidy*, 72 N. Y. 133; *Casserly* v. *Witherbee*, 119 N. Y. 522, 526; Jones on Chattel Mort. [4th ed.] § 707.) The defendant Colson has been paid in full his twenty per cent for all stamps he has sold and he never had a contract for the sale of all the Worthington collection. (*Kramer* v. *Wien*, 92 Misc. Rep. 159; *Crawford* v. *M. & E. Pub. Co.*, 163 N. Y. 404; *Acquinto* v. *Vischer*, 165 N. Y. Supp. 369.)

HOGAN, J. May 7, 1912, at Cleveland, Ohio, one George H. Worthington executed and delivered to plaintiff his certain promissory note, wherein on or before two years from date, for value received, he promised to pay to plaintiff three hundred thirty-seven thousand five hundred dollars. Contemporaneously therewith, Mr. Worthington executed and delivered to plaintiff a chattel mortgage covering a stamp collection, as collateral security for the payment of said note.

In January, 1916, plaintiff instituted an action in the Supreme Court, Erie county, against George H. Worthington and the defendant, appellant, McGraw, as assignee for the benefit of creditors of Worthington, under an

assignment executed September 28, 1915, together with other defendants, wherein she sought to have determined the amount due to her on said note; that she be declared to have a first lien on the stamp collection and that she had a right to sell the collection for the purpose of satisfying the lien, the costs of the action and the expenses of the sale.

February 16, 1917, judgment was entered in the action which determined the validity of the note and chattel mortgage; that the mortgage had not been filed, but plaintiff was a mortgagee in possession of the stamp collection, a portion of which was in the actual custody of defendant Colson as sales agent of plaintiff, but which had been returned to plaintiff at the time of the trial of the action.

A further finding was made, the importance of which will later be referred to, in substance that plaintiff had retained possession of all the stamps upon which she claimed a lien except only that she permitted defendant Worthington (mortgagor) to use the Transvaal stamps, so called, as collateral to his own personal loan, but she afterwards recovered the stamps and holds them subject to her lien, having paid to recover them $15,000.

The judgment determined that plaintiff had a first lien on the entire stamp collection formerly belonging to Worthington in the sum of $346,602.30, and costs of the action, $354.20, a total of $346,956.50; that the stamps should be sold by plaintiff in accordance with the rules of law and practice of the court in the case of a foreclosure of chattel mortgages or pledges; that said sale be public and to the highest bidder, after giving due notice as required by law.

Subsequently plaintiff applied upon the judgment the avails of stamps sold by her at private sale, and on or about April 17, 1917, she caused to be served on defendant McGraw a notice requiring him to pay to her the sum of $339,386.90, the balance due on her lien as determined

on or before May 8, 1917, and in default of such payment the stamp collection would be sold at public auction on May 29, 1917. The notice served stated that the value of the stamps was supposed to be about $700,000.

At that time plaintiff did not have all of the stamps so directed to be sold, but some of such stamps were in part in the hands of plaintiff's agent Colson at Boston, Massachusetts, and in part in the possession of other persons to whom he, Colson, had sold or delivered the same.

The advertised sale was duly adjourned from time to time until June 29, 1917. Pending the proposed sale, the defendant McGraw, as assignee, the owner of the stamps directed to be sold by the judgment, offered to redeem the same by paying plaintiff the amount claimed to be due on her lien and the expense incurred by serving the notice of sale together with the expense of advertising the sale, upon delivery to him by plaintiff of the stamps.

A controversy arose between plaintiff and defendant McGraw as to the amount due the plaintiff and her ability to deliver to him the stamps; thereupon on June 22, 1917, the plaintiff and McGraw, as assignee, entered into an agreement in writing looking towards a redemption of the stamps and an adjustment of differences. The agreement recited the recovery of the judgment of February 16, 1917, in favor of plaintiff and the terms of the same; the proposed sale of the stamps thereunder on June 29, 1917; readiness on the part of McGraw, as assignee of the mortgagor, to redeem the stamp collection by paying to plaintiff the amount due on account of her lien and the expenses incurred by her; further, that prior to the entry of the judgment in the foreclosure action, plaintiff had received on account of her lien and claim four thousand five hundred dollars which should be applied in reduction of the same as determined by said judgment, and since the entry of said judgment plaintiff had caused to be sold portions of said stamp collection

directed by the judgment to be sold at public sale and had on various dates between February 20, 1917, and June 19, 1917, received of the proceeds of such sales the sum of $21,500, which sums plaintiff conceded should with interest thereon be applied in reduction of her claim set out in the judgment, and after applying such debits in reduction of her claim determined by the judgment the amount of her claim at the date of the agreement would be reduced to the sum of $327,278.14.

The agreement provided that the following facts now appear: That defendant Colson had received as the proceeds of sales of stamps made at private sale above and beyond the amounts paid plaintiff at least the sum of $31,868.41 which he had not paid over to plaintiff, of which amount Colson claimed $7,995.26 as commission for making such sales, and that of the stamp collection directed to be sold by the judgment, plaintiff had theretofore delivered to Colson to sell at private sale certain enumerated and other stamps all of which were in the possession of Colson, and plaintiff was at that time unable to make delivery of the same, the estimated value of such stamps being approximately $55,000. A further provision of the agreement recited that the attorney and counsel for plaintiff in the foreclosure action had rendered the plaintiff bills for services therein amounting to $13,327 and that plaintiff claimed that she had incurred expenses in connection with the stamp collection to the amount of $1,115, which sums aggregated $14,442.

As to the item of $31,868.41, defendant McGraw claimed the same should be applied in reduction of the claim of plaintiff. Plaintiff contended that Colson was entitled to his commissions, $7,995.26, on such sales, and as to the balance in his hands, $23,873.15, defendant McGraw should look to Colson for the same.

As to the item of $55,000, defendant McGraw claimed that such stamps in possession of Colson should be

delivered to him or the value thereof applied in reduction of plaintiff's claim under the judgment in the foreclosure action. Plaintiff asserted that defendant McGraw should look to Colson for the return of the stamps.

As to the item of $14,442, plaintiff claimed that McGraw was required as a condition of a redemption to pay said amount for counsel's fees and expenses. Defendant McGraw denied that as a condition of redemption he was obligated to pay the same.

The agreement then recited in substance that it was deemed desirable by both parties that redemption should be effected at that time; that defendant McGraw should be put in possession of so much of the stamp collection directed to be sold by the judgment as was then in possession of plaintiff; that McGraw should pay to plaintiff such portion of her claim not in dispute, to wit, $200,409.78 (which sum was thereupon paid), and that the sum of $101,310.41 should be deposited in trust to await the adjustment or judicial determination of the disputed questions.

The execution of the agreement, the payment and deposit of the moneys was to be regarded and deemed as a redemption by the owner of the stamp collection directed to be sold by the judgment of February 17, 1917.

This action was commenced by plaintiff about one week after the execution of said agreement between the parties against McGraw, as assignee, etc., and Warren H. Colson. The complaint set forth at length the agreement made between plaintiff and McGraw on June twenty-second, alleged that defendant Colson retained in his hands the stamps of the estimated value of $55,000, and the sum of $31,868.41, of which amount he claims $7,995.26 as commissions, all of which he refused after demands to deliver to plaintiff; asserted the right of plaintiff to be paid the item of $14,442, counsel fees and expenses, and in addition for attorney's fees in this action,

and that the moneys and stamps in possession of Colson in addition to the sum of $101,310.41 deposited in trust was subject to her claim and demanded judgment that the rights of the parties to the action be determined.

The defendant Colson in his answer admitted that he retained certain enumerated stamps together with other stamps, but denied that the value of the same was $55,000, denied that he held $31,868.41, but admitted that he held certain moneys and stamps by reason of a lien thereon against the former owner, Worthington, and his successor, McGraw, as assignee, for services and disbursements, and set up a counterclaim for work and services in an endeavor to make a sale of the stamp collection in the sum of one hundred thousand dollars.

Defendant McGraw, as assignee, in his answer denied that in order to determine the rights between the parties to the fund in question that the amount of any alleged lien of the defendant Colson should be adjudicated, and also denied certain paragraphs of the complaint particularly with reference to Colson and affirmatively set forth the contract agreement between him and plaintiff, the deposit of the fund of $101,310.41 in trust and demanded judgment that the fund so deposited in trust be adjudged to belong to him. He also served a reply to the answer served by Colson, denying the alleged counterclaim set out by that defendant.

The agreement between the parties plaintiff and defendant McGraw was set forth in its entirety in the findings made by the trial justice and he found that the agreement truly recites the facts except only that through an error in the computation of interest amounting to $463.85 the amount of plaintiff's claim under her judgment of the date should have been $327,741.99 instead of $327,278.14.

Amongst other findings of fact made by the trial justice were the following:

" That the only contract for the sale of stamps of the

collection is that evidenced by the letters of Worthington to Colson of June 23d, 1914, July 13th, 1914 and May 20th, 1915.   The letter of June 23rd, 1914, in substance was as follows:   ' Confirming our verbal arrangements of last Saturday for the sale of my collection of postage stamps or such portion of it as I conclude to sell from time to time you are to have the exclusive sale of same, pay all expenses in connection with it, devote as much of your time as is necessary to dispose of it to good advantage in the least time possible;  *  *  *  this arrangement is to continue as long as I am satisfied you are making good progress in the disposition of the stamps and results are satisfactory.'   The letters of July 13th, 1914 and May 20th, 1915, merely changed the rate of commissions to be paid Colson.

" That such contract above quoted was made by Worthington as agent for plaintiff but without authority at the time and his acts were subsequently ratified by plaintiff, and that defendant Colson knew at all such times in making such contract Worthington was assuming to act for plaintiff."

Further findings were in substance that all sales of stamps made by defendant Colson were made by him as the authorized agent of the plaintiff; that defendant McGraw, as assignee, became the owner of the stamps subject to the lien of plaintiff on September 15, 1915, and as such owner effected the redemption thereof as set out in agreement set forth in the complaint; that defendant McGraw did not authorize or assent to the sales of stamps made by plaintiff or her agent or to the delivery of stamps to the latter for sale at any time and had never employed Colson to render service for him and Colson had not rendered service to him; that defendant Colson had been paid by plaintiff and has taken credits in his accounts as presented on the trial with plaintiff for his commissions on all sales of stamps effected by him as agent of plaintiff except with respect to the outstanding

accounts receivable. We now pass to a consideration of the items specified in the agreement between plaintiff and defendant McGraw as constituting the questions to be determined, the decisions of the trial justice thereon and our conclusions relating to the same.

The trial justice held that defendant McGraw was not required as a condition of redemption of the stamps to pay to plaintiff the sum of $13,327, the item of counsel and attorneys' fees mentioned in the agreement, and with that conclusion we concur.

We shall now consider the item of $31,868.41 stipulated by plaintiff as the proceeds of sales of stamps made by Colson, her agent, at private sale and as being the minimum sum which he had not paid over to her. The only question relating to same being (1) Colson's claims for commissions thereon, $7,995.26, and (2) plaintiff's claim that defendant McGraw should pay to plaintiff the amount from the fund on deposit and look to Colson for the same. The trial justice having properly found that Colson had been paid all commissions save on sale of stamps on accounts receivable, such finding disposed of the claim of $7,995.26 and left the amount of cash in custody of Colson the sum stipulated in the agreement. Notwithstanding that fact the trial justice found the amount to be $17,524.53, deducted therefrom the sum of $1,650 allowance to Colson for remounting stamps, and for the balance, $15,874.53, awarded a judgment to plaintiff against defendant Colson to inure to the benefit of defendant McGraw, as assignee, which judgment should be assigned to defendant McGraw by plaintiff. Therein we conclude that the trial justice was in error.

Plaintiff had an inventory of the stamp collection which enumerated the number, class and value of the different stamps. She also had an account with her agent Colson, and accounts of their dealings from him. She had the advice of eminent counsel in all matters pertaining to her financial and business interests and

personal information of every material fact in connection
with the stamp collection. Under such circumstances
she entered into the agreement with defendant McGraw
and therein stipulated that her agent Colson held at
least $31,868.14 the avails of stamps sold by him for her.
The complaint in this action verified by her alleged that
sum of money in possession of Colson and his refusal
to pay the same on demand. The evidence adduced
on the trial disclosed that on May 26, 1917, a little
over three months subsequent to the entry of judgment
in the foreclosure action and three days prior to the
date the stamps were advertised to be sold thereunder,
defendant Colson's account with plaintiff showed a balance
to her credit of $28,873.15. In June Colson paid to
counsel for plaintiff for account of the latter $5,000,
which left in his hands $23,873.15 and in addition the
sum of $7,995.26 claimed by Colson for commissions,
the two amounts making the item of $31,868.41. The
finding that Colson was not entitled to commissions
thus established the amount of money belonging to plain-
tiff in his hands at the stipulated sum of $31,868.41.
The trial justice instead of charging plaintiff with that
amount and awarding the same to defendant McGraw
out of the sum on deposit found that the amount of
money in Colson's custody was $17,524.53. But one
explanation can be found for the conclusion reached by
the trial justice. Colson though not a party to the fore-
closure action was a witness for plaintiff on the trial.
His account with plaintiff was a matter of consideration
in a determination of the amount unpaid on her mortgage
lien. For the purpose of the trial of this action, Colson
presented a revised account made on an accrual basis
and which included debit items against plaintiff on account
of disbursements on special trips to Europe, Hawaii,
San Francisco and Cleveland, interest on advances made
to plaintiff, etc. The purpose of such account is obvious.
Colson had by his accounts the sum of at least $31,868.41

belonging to plaintiff. He sought to reduce his liability, first, by a claim for commissions which as heretofore pointed out the trial justice found he had been paid; second, by charges to which he was not entitled and so found by the trial justice in the finding that the only contract made by plaintiff for sales of stamps was evidenced in writing between Worthington and Colson, June 23, 1914, hereinbefore quoted, and which was ratified by plaintiff, and under which contract Colson was to pay all expenses in connection with a sale of the stamps. Notwithstanding that finding the trial justice gave credence to the revised account and found the amount of moneys in his hands to be $17,524.53. Such finding is irreconcilable with the former findings. The evidence clearly establishes that Colson held $31,868.41 of cash belonging to plaintiff and there is no evidence in the record to support the finding that the amount was only $17,524.53. From the amount found by the trial justice he allowed Colson $1,650 for services performed in remounting stamps early after the relations between the parties were established. The services were voluntarily performed by him. Had plaintiff incurred such expenses it might have been a subject of litigation in the foreclosure action and therein determined and if allowed included in the amount due on her mortgage. The judgment in the former action adjudicated the amount due to her and was binding upon her and defendant McGraw. She cannot be permitted to sever a claim existing at the time of commencement of the foreclosure action and secure relief thereon in this action.

The trial justice was also in error in holding that plaintiff should assign to defendant McGraw a judgment ordered in her favor against Colson for the amount found due from Colson to her as cash on hand after deducting the allowance of $1,650, viz., $15,874.53.

The plaintiff chose to disregard the judgment awarded her in the foreclosure action, which provided that the

stamps should be sold at public sale and contrary thereto sold through her agent Colson many stamps at private sale without, as the trial justice found, the assent of defendant McGraw. Having parted with such stamps she was, therefore, unable to deliver them as well as other stamps in the custody of Colson upon a redemption of the stamp collection. Stamps or the avails of stamps sold in the possession of Colson were the possession of plaintiff and the value of the same was applicable to a reduction of the amount of her lien. Having failed to comply with the direction of the court to sell the stamps at public sale, she assumed all risks of sales of stamps at private sale for cash or for credit and assumed a liability to respond for the value of any stamps which she had intrusted to others. The effect of the determination made by the trial justice was to require defendant McGraw to pay to plaintiff as a requisite of redemption a sum of money in excess of an amount held by her agent, avails of sale of the mortgaged property, and then seek to enforce a judgment against such agent for said amount. We are not aware of any principle of law or equity which would justify such conclusion. The plaintiff should have been charged with the item of $31,868.41 in reduction of the amount on deposit.

The trial justice found that Colson, as agent for plaintiff, sold on credit to parties in Honolulu and Paris certain stamps of the value of $15,469.15 upon which he was entitled to a commission of $3,093.83 and adjudged that Colson should assign such accounts for the balance, $12,375.32, to plaintiff and that the latter should thereupon execute an assignment of the same to defendant McGraw. The reasoning advanced with reference to the preceding item is applicable to the present item and the amount stated is chargeable direct to plaintiff.

The next item has reference to the deposit by defendant McGraw of $55,000, the estimated value of stamps in the custody of Colson. The agreement between the

parties provided that McGraw claimed that the stamps should be delivered to him or the value thereof, $55,000, applied in reduction of plaintiff's claim as adjudicated. Plaintiff claimed that McGraw should look °to Colson for the stamps. As to the claim of plaintiff we have already expressed our views.

Upon this trial defendant Colson deposited in· court certain stamps found by the trial justice to be of the value of $28,400 and such stamps were awarded to the defendant McGraw. The record discloses that additional stamps remained in the custody of Colson and further that stamps known as Transvaal stamps were not delivered up or accounted for by plaintiff. As to the Transvaal stamps which were inventoried at $36,527, the trial justice in the foreclosure action found that the defendant ·Worthington (mortgagor) was permitted by plaintiff to use the Transvaal stamps, so called, as collateral security to his own personal loan, but she (plaintiff) afterwards recovered the stamps and *holds them subject to her lien,* having paid therefor to recover them the sum of $15,000. The judgment having adjudicated that the Transvaal stamps were subject to the lien of the mortgage were included in the property directed to be sold to satisfy the lien. Plaintiff and defendant McGraw were concluded by the judgment and the adjudication was a bar to any future investigation as to such stamps being subject to the mortgage of plaintiff and subject to redemption by defendant McGraw. The trial justice evidently overlooked the effect of that judgment and awarded the stamps to plaintiff personally. Not only was error committed therein but the evidence disclosed that plaintiff had received from the sale of some of said stamps and a few additional stamps sold the amount of $15,000 paid by her to recover the stamps and still has on hand Transvaal stamps of the value of $12,000 to $15,000. Plaintiff is, therefore, chargeable with the value of any stamps remaining in her possession and

the burden of proof rests upon her to prove the disposition of all of the stamp collection intrusted to her possession. Defendant McGraw having deposited $55,000, under the agreement is entitled to stamps of that value or a return of such excess thereof as may remain after deducting the value of stamps delivered to him.

The remaining item included in the agreement is one of $850 allowed plaintiff for expenses alleged to have been incurred by her in the care of stamps. The evidence discloses that such claim existed at the time of the trial of the foreclosure action, and for the reasons assigned heretofore with reference to the severance of a claim properly involved in that action, the item was erroneously allowed plaintiff in this action.

Having considered the items in controversy between the plaintiff and defendant McGraw and indicated the only issue to be tried between them, a new trial of the action must be had; the issues in the action are within a small compass and as our reversal is confined to the items discussed, concurring as we do with the remaining conclusions of the trial justice, a large portion of the evidence presented upon the trial of this action may be eliminated upon such future trial.

As to the defendant Colson, the trial justice refused to find as requested that he, Colson, was a factor with respect to all stamps actually delivered to him and as such is entitled to a lien thereon for the reasonable value of his services under his contract with plaintiff or that he had an equitable lien upon the funds and stamps in court or entitled to the relief sought by him in this action. We approve the conclusions of the court in that regard.

The judgment should be affirmed, with costs as between defendant McGraw, as assignee, and defendant Colson, and as between plaintiff and defendant Colson upon the counterclaim asserted by the latter, without costs.

The judgments should be reversed and new trial granted,

with costs to abide event as between plaintiff and defendant McGraw, as assignee, etc., and as between plaintiff and defendant Colson, except as above stated.

HISCOCK, Ch. J., CHASE, CARDOZO, MCLAUGHLIN and CRANE, JJ., concur; POUND, J., not voting.

Judgment accordingly.